HALL v. BRIDGEPORT TRUST CO. et al.

(Circuit Court, D. Connecticut. March 25, 1903.)

No. 1,061.

**1. WILLS—CONTRACTS—SPECIFIC PERFORMANCE—BILL.**

Where plaintiff sued to enforce an agreement by intestate, her foster father, to make her his heir, it was proper for plaintiff to allege that intestate carried on a tea business in partnership with another, and that such copartnership and the good will of the business were valuable, and to allege generally intestate's troubles with his relatives, that such troubles led to an estrangement, that intestate left no will, and that administrators had been appointed in another jurisdiction; that appeals had been taken by intestate's relatives from the appointment of the resident administrator, of which complainant was not notified; that disputes had arisen between relatives of the half blood and relatives of the whole blood, which would result in expense and delay to complainant, and would be avoided if complainant's contention, alleged in the bill, was upheld; and that intestate's relatives are so widely distributed that it would be impossible for complainant to join them all as parties, but that she intended to institute another action in another state to restrain them from interfering with the property involved.

**2. SAME—IMPERTINENCE.**

Allegations as to how intestate's tea stores became valuable, and how interference with them in the manner proposed by defendants would destroy their value, and that intestate's administrators object and propose to contest complainant's endeavor to collect certain checks and drafts which intestate gave her for value, were objectionable as impertinent.

**8. SAME—APPOINTMENT OF MASTER—FEES—APPORTIONMENT.**

Where a master was appointed to hear and determine exceptions to a bill for impertinence, and the contentions of both parties were partially sustained, the cost of the reference should be apportioned.

In Equity. On objections to a bill for impertinence, which were referred to a special master, and on his report thereon, with the exceptions by both parties thereto.

So much of the bill as is necessary for the presentation of the questions involved is as follows:

"First. That George Francis Gilman, an inhabitant of the city and county of New York, in the state of New York, died at Bridgeport, in the state of Connecticut, on or about the 3d day of March, 1901.

"Second. That said George F. Gilman was, at the time of his death as aforesaid, possessed of a large amount of real and personal property, consisting of houses and lands in the city and county of New York, and in the city and town of Bridgeport, in the state of Connecticut, and elsewhere, and of goods, chattels, and money and securities for money, in the states of New York and Connecticut, and elsewhere, and especially was at the time of his death engaged in the business of selling teas and groceries at retail, in copartnership with one George H. Hartford, under the name and style of the 'Atlantic & Pacific Tea Company' and the 'Great American Tea Company,' under which names and styles he, together with said Hartford, carried on said business of selling teas and groceries at retail in about two hundred stores, situated in various parts of the United States of America; the said stores being, as your orator is informed and believes, in 20 different states, but your orator is unable at the present time to state the exact locations of all of said stores. * * * That the business so carried on under said names and styles, the 'Atlantic & Pacific Tea Company' and the 'Great American Tea Company,' became, and at the time of the death of the said Gilman was, extremely profitable and remunerative, by reason whereof the said

names and styles, the 'Atlantic & Pacific Tea Company' and the 'Great American Tea Company,' had become well and favorably known throughout the United States, and the good will of the business carried on under the said names became and was of great value, adding largely to the actual value of the assets and merchandise in, the said stores. * * * That the estimated value of the estate whereof the said George F. Gilman died seised and possessed is over $1,500,000.

"Third. That several years prior to his death as aforesaid the said George F. Gilman, having conceived a strong personal regard for your orator and being desirous that she should become a member of his household, adopted your orator as his daughter, and did make her a member of his household, and thereafter until the time of his death your orator did reside with him as his daughter, receiving from him the care, support, and affection of a father, managing his household, and rendering to him the same obedience and affection as if she had been his natural daughter. And your orator further shows that in consideration of said services and affection, and as an inducement for her to render the same as long as he lived, and for other good and valuable considerations, the said George F. Gilman, on or about the 1st day of November, 1900, entered into an agreement with your orator that, if she should continue to live with him and care for him as a daughter until the time of his death, she should have and be entitled to all his property, both real and personal, as fully and to the same extent as if she were sole lawful issue.

"Fourth. That your orator did at all times since the making of said agreement, and up to the time of the decease of the said George F. Gilman, perform the said agreement on her part, according to the true intent thereof, abandoning for such purposes, and upon the wish and desire of said Gilman, all other prospects in life, and devoting herself solely to his care, welfare, and happiness as a daughter should.

"Fifth. That the considerations and services so rendered by your orator as above recited were as she verily believes of great value and benefit to the said George F. Gilman, and were so appreciated and regarded by him, and were no less than would have been rendered by a daughter; but that the same are of such a character that they cannot be readily admeasured, and are not capable of exact ascertainment or valuation.

"Sixth. That at the time of executing the said agreement the said George F. Gilman was a widower and childless, and so continued until his death. That he had no relatives who resided with him, or who were dependent upon him in any manner, or to whom he owed any legal or moral duty to care for them or provide for them out of his means or estate, or who were in any manner entitled to look to him for pecuniary aid, or who had any moral claim to be considered as the objects of his testamentary bounty. * * * That none of said relatives lived on terms of intimacy or cordiality with the said George F. Gilman, but, on the contrary, all of them had for many years been estranged from him, and many of them were bitterly hostile to him. That, as your orator is informed and believes, the said Anna K. Gilman, Frazier Gilman, and Theophilus Gilman, sister and brothers of the half blood, together with Charles Gilman, a deceased brother of the half blood, had ever since the decease of Nathaniel Gilman, their father and the father of the said George Gilman, been engaged in litigation with the said George Gilman, claiming from him large sums of money upon alleged claims growing out of his management of his father's estate, and that some of them had made unsuccessful efforts to have him removed as executor and trustee of his father's property, which proceedings resulted in great bitterness of feeling between the said George F. Gilman and his said relatives of the half blood, so much so that in or about the year 1877 the said Frazier Gilman, Charles B. Gilman, and Theophilus Gilman assaulted their said brother George F. Gilman in the streets of New York, and threatened him then and there with bodily harm, and the said George F. Gilman thereafter held no communication with his said brothers, and by reason of such assaults and threats, and being in continual fear of repetitions thereof, thereafter largely secluded himself, and absented himself from the city of New York, and took up a temporary abode and dwelling at Black Rock, near Bridgeport,

Connecticut. That other litigations were instituted against said George F. Gilman, deceased, by * * * Caroline Garczynski, and by the children and representatives of his deceased sister, Sarah Percival, arising out of matters connected with the estate of his said father, Nathaniel Gilman, by reason of which litigation the said relatives of said George F. Gilman for many years prior to his death were estranged from him, and held little or no communication with him.

"Seventh. That, as your orator is informed and believes it to be true, the said George F. Gilman failed and neglected in his lifetime to make any will confirming the provisions of the hereinbefore recited agreement with your orator, and, as your orator is informed and believes, he died intestate.

"Eighth. That on or about the 11th day of March, 1901, the surrogate of the city and county of New York, in the state of New York, issued to the aforesaid Edward L. Norton and Theophilus Gilman letters of administration upon his goods, chattels, and credits, and, as your orator is informed and believes, the said Edward L. Norton and Theophilus Gilman have since taken the oath and given the bond required of them as such administrators, and are now acting or claiming to act as such. That said proceedings were taken without any notice to your orator, and that no citation was issued to her upon said petition for letters patent of administration in the state of New York.

"Ninth. That on or about the ——— day of March, 1901, the aforesaid Edward L. Norton and Edward S. Percival, claiming to be the next of kin, presented to the probate court of Bridgeport, Connecticut, a petition alleging that George F. Gilman, deceased, died intestate and without issue, praying that letters of administration issue to them as next of kin and heirs of said George F. Gilman, deceased. That, as your orator is informed and believes, such proceedings were thereupon had in such probate court that on or about the 19th day of March, 1901, letters of administration were issued out of said court to the defendant the Bridgeport Trust Company, upon the estate of said George F. Gilman, deceased, as by reference to the said letters, an exemplification whereof your orator will produce to this court, will more fully appear. That the said Bridgeport Trust Company has given the bond required by said court, and now claims to act as administrator, but that the said Edward L. Norton and Edward S. Percival, as your orator is informed and believes, together with other relatives of the said George F. Gilman, deceased, object to the appointment of the said Bridgeport Trust Company as administrator as aforesaid, and claim that the same is improper and illegal; and, as your orator is informed and believes, such relatives have appealed, or threatened and intend to appeal, from the decision of the probate court appointing such administrator to the superior court of the state of Connecticut in and for Fairfield county, which court has, your orator is informed and believes, jurisdiction to hear and determine said appeal, but that, as your orator is informed and believes, said appeal cannot be heard and decided for several months.

"Tenth. That all such said proceedings had in said probate court of Bridgeport, Connecticut, were had without notice to your orator, who has not been named in the said petition for letters of administration as a person entitled to be cited with respect to the administration of said estate, and no citation was issued to her to appear and attend said probate.

"Eleventh. That, as your orator is informed and verily believes, the said defendant the Bridgeport Trust Company claims by virtue of its appointment as administrator as aforesaid, under and by virtue of the provisions of certain acts of the Legislature of the state of Connecticut, to be entitled to take possession of, and sell and convert into money, all of the property, both real and personal, whereof the said George F. Gilman died seised and possessed, and after administering thereon, and after discharging the expenses of administration and all debts and obligations of the said deceased which may be proven against his estate, to distribute and divide in money the proceeds of such sale and conversion of his real and personal property. That acting under and by virtue of said pretended authority, and in violation of the rights of your orator as hereinbefore set forth, the said Bridgeport Trust Company did, on or about the 22d day of March, 1901, forcibly enter

and take possession of the residence property at Black Rock, Connecticut, formerly belonging to said George F. Gilman, with the appurtenances, and also all of the personal property thereat, including the horses, harnesses, carriages, traps, and furnishings incidental thereto, which said taking was after due and timely notice by your orator of her right, title, claim, and interest therein, all of which claims to any and all of which property were denied by the said Bridgeport Trust Company as administrator as aforesaid, who asserted superior title thereto as administrator of the estate of the said George F. Gilman, deceased. That, as your orator is informed and verily believes, the said defendant the Bridgeport Trust Company claims by virtue of its appointment as administrator as aforesaid to take possession of the tea stores, conducted under the name and style of the 'Atlantic & Pacific Tea Company,' which are situated in the state of Connecticut, and also, as your orator is informed and believes, claims as such administrator to be the principal administrator of the said George F. Gilman, deceased, and as such to have the right to apply in other jurisdictions for the appointment of ancillary letters of administration to it, or its nominees, entitling it, or them, to take possession of the tea stores and other property of said George F. Gilman in such other states.

"Twelfth. And your orator further shows that the good will of the said tea business hereinbefore more particularly described is due in a large measure to the good management of the same by the said George F. Gilman and George H. Hartford, and to their ability in the selection and training of employés who had become experienced in the conduct of said stores, and that if the conduct of such business shall, pending the litigation which now threatens to arise over the estate of said George F. Gilman, as herein set forth, be interfered with by the said Bridgeport Trust Company, or by ancillary administrators appointed in the various jurisdictions where such stores are situated, so that the unity of management thereof shall be destroyed or interfered with, the said good will of said business will be in a large measure, if not wholly, destroyed, to the damage of your orator, as the person entitled to the share or interest therein formerly belonging to said George F. Gilman. And your orator further shows that it is the intention of the said Bridgeport Trust Company, as she verily believes, to sell and convert into money all of the property, real and personal, of which said George F. Gilman died possessed, in the state of Connecticut, and also claims or will claim that all of the property of said George F. Gilman situated without said state shall in like manner be reduced to possession, and, after compliance with the laws of said several states with respect to creditors, be transmitted to the state of Connecticut, there to be finally administered upon by said defendant the Bridgeport Trust Company; that, while it is true that such action of the said Bridgeport Trust Company would be proper and necessary, if said George F. Gilman had died a resident of Connecticut, and if his said estate were to be divided among the numerous persons claiming same as his heirs and next of kin, such action, if taken as threatened by said Bridgeport Trust Company, will in truth and fact be a damage and injury to your petitioner, and a violation of her rights under and by virtue of the agreement hereinbefore referred to, whereby the entire property, both real and personal, of said George F. Gilman, is given to her; that it is the desire of your orator, as the person solely interested in the property, real and personal, of said George F. Gilman, that the same, after due administration thereof and satisfaction of all debts and claims against the same, shall be retained as nearly as possible in the manner and condition in which it was invested and held by the said George F. Gilman in his lifetime, and especially that the said tea business shall continue to be conducted as heretofore, under the management of the said George H. Hartford and the experienced employés of said business. And your orator charges and verily believes that, if the same is not done, she will suffer irreparable injury and such as cannot be readily admeasured in money.

"Thirteenth. And your orator further shows that prior to his death the said George F. Gilman for valuable considerations executed and delivered to her certain checks and drafts for money; that she has commenced actions against the Fifth Avenue Bank, in the city and state of New York,

against the Bank of North America, in the city and state of New York, against the firm of Chapman, Selter & Allen, in said city and state, and against the Bridgeport Bank, in Bridgeport, in the state of Connecticut, to recover moneys assigned and transferred to her by the said George F. Gilman; that, as your petitioner is informed and believes, the said administrators of George F. Gilman intend to contest or procure to be contested the said actions, and to intervene and be interpleaded therein, for the purpose of asserting in said several actions a claim that they, as administrators of said George F. Gilman, are entitled to the moneys sued for, and that the plaintiff is not so entitled; that, if said defendant shall take such action, your orator will be put to greater expense in contesting said actions, and will be obliged to pay, not only the costs of prosecuting the same, but also, as the person solely entitled to the estate of said George F. Gilman, will be compelled to pay or allow to it the costs and expenses of contesting said actions, thus being, if such actions shall be contested, forced and compelled to pay the costs and expenses of said action, both as the plaintiff therein and as defendant, all of which costs and expenses can and justly should be avoided, and not charged against your orator.

"Fourteenth. And your orator further shows: That a dispute has arisen between the relatives of said George F. Gilman, deceased, with respect to which of them are entitled to share in his real and personal estate, it being claimed and alleged by the relatives of the half blood that the said George F. Gilman was, at the time of his death, a resident of the state of New York, under and by virtue of the laws of which state the said relatives of the half blood are entitled to share equally with the relatives of the whole blood of like degree and consanguinity; whereas, on the contrary, certain of the relatives of the full blood claim that said George F. Gilman was at the time of his death an inhabitant and citizen of Bridgeport, in the state of Connecticut, and that under and by virtue of the laws of that state the relatives of the half blood are not entitled to share in the estate of said decedent. which they claim must be divided solely among the relatives of the whole blood. That, as your orator is informed and believes, a further question connected with their birth has also arisen among the relatives of the said deceased, it being claimed by certain of them that certain others are not lawfully entitled as next of kin to share in the distribution of said estate, under the laws of whichever state the said question is to be determined. That the said question so arising between the next of kin of said George F. Gilman, deceased, threatens, unless restrained by the judgment of this honorable court, to be bitter and protracted, and to be prolonged for many years, and that the determination of said question is so far involved in doubt, and the parties claiming to be interested therein are so numerous and so widely distributed, as to residence, that a multiplicity of actions will be necessary to determine the same, and that a final decision of said question can only be reached after long and expensive litigation; but that your orator is informed and believes it is immaterial to determine said question, in view of the fact that by agreement with the said George F. Gilman all of his estate, both real and personal, shall belong to your orator after his death, and that the contest of said question will unnecessarily waste the said estate, to the irreparable damage and injury of your orator.

"Fifteenth. And your orator further respectfully shows to this court that by reason of the diverse residences of the relatives and next of kin of said George F. Gilman, deceased, and by reason of the wide distribution of his property and estate, so that the same is not all situated within the jurisdiction of this honorable court, or of any other court of like jurisdiction, it is impossible for your orator to join the said next of kin in this action, but that it is the intention of your orator, upon due proof of filing of this bill, to commence an action in the city and state of New York, where most of the relatives of said George F. Gilman reside, and where, as your orator is informed and believes, the others or most of them may be found, enjoining and restraining them, and as well the administrators appointed in said state, from instituting and maintaining the said vexatious and numerous litigations, or from interfering with the property or estate of said George F. Gilman, deceased, and especially the said tea business, and from doing any

other act or thing in the premises to the damage and injury of your orator, to the end that her title to the property of which said George F. Gilman died seised and possessed may be determined in this action against the personal representative of said George F. Gilman, deceased, and without a multiplicity of actions.

"Sixteenth. And your orator further shows that the said defendant George W. Smith has or claims to have some interest in the property and estate of the said George F. Gilman, deceased, but whether the said claim is as a creditor of said Gilman, or as a copartner with him in said business, or otherwise, your orator is unable to state; but she alleges upon information and belief that the said George W. Smith has no claim in or to said property, and makes him, by this her bill, a party hereto, to the end that he may assert and prove his said claim, or be forever enjoined from maintaining the same.

"Seventeenth. And your orator further shows that all of the aforesaid matters and things are of the value of over $2,000, and are within the jurisdiction of this court. In consideration whereof, and forasmuch as your orator is remediless in the premises by the strict rules of common law, and can only have relief in a court of equity, where matters of this nature are properly cognizable and relievable, and to the end, therefore, that the said defendants may, if they can, show why your orator should not have the relief hereby prayed, and may make a full disclosure and discovery of all matters aforesaid, and according to the best and utmost of their several and respective knowledge, remembrance, information, and belief, full, true, direct, and perfect answer make to the matters hereinbefore stated and charged, but not under oath (an answer under oath being hereby expressly waived), and that the said defendants may be perpetually enjoined and restrained from the violation of your orator's rights, and especially from interfering in the conduct of the defendant George H. Hartford in the business carried on by him as surviving partner of the said George F. Gilman, under the name and style of the 'Great American Tea Company' and the 'Atlantic & Pacific Tea Company,' and to the end that the right of your orator in and to the property of the said George F. Gilman may be adjudged and determined, and to the end that the said Bridgeport Trust Company be instructed with respect thereto, your orator prays that your honors may grant a writ of injunction, issuing out of and under the seal of this honorable court, perpetually enjoining and restraining the said Bridgeport Trust Company, as administrator as aforesaid, of George F. Gilman, deceased, its clerks, attorneys, agents, servants, and workmen, and the said defendant George W. Smith, from interfering with the business conducted under the name and style of the 'Great American Tea Company' and the 'Atlantic & Pacific Tea Company,' or selling and converting into money any of the real property and securities belonging to the estate of the said George F. Gilman, deceased, except in so far as a sale of the same shall be found necessary to raise moneys wherewith to pay the debts owed by said George F. Gilman to persons in the state of Connecticut, as the same shall be ascertained in due course of administration, and from doing any other act and thing adverse to the rights of your orator in the premises. And your orator further prays that it shall be decreed by this honorable court that the said defendant the Bridgeport Trust Company, as administrator as aforesaid, perform according to its true intent and meaning the agreement of the said George F. Gilman, made with your orator in his lifetime, that she should have and continue to enjoy his property after his death in the same manner as if she had been his daughter, and sole heir and next of kin, and that the said defendant the Bridgeport Trust Company be decreed, upon due administration and settlement of said estate, to deliver and pay over to your orator such assets as remain in its hands in like manner as if she were the sole heir and next of kin of said intestate. And your orator further prays that a provisional or preliminary injunction be issued, restraining the said defendant the Bridgeport Trust Company from any further interference with the business of the said the Atlantic & Pacific Tea Company, and the Great American Tea Company, and with the defendant George H. Hartford as surviving partner of the said

George F. Gilman, and for such other and further order during the pendency of this action as the case may require and to your honorable court may seem meet. * * *"

Hatch & Wickes and Daniel Davenport, for complainant.
George P. Carroll, for respondents.

PLATT, District Judge.    There is a pertinent reason why the court should proceed with abundant caution in passing upon the exceptions to the complainant's bill, and this, briefly stated, is that reason: Whatever shall be stricken out will have passed away from the contention absolutely until remedial action shall be invoked and granted. To place the case where the latter course becomes a possibility would produce an awkward, unnatural, unwieldy, and unwise situation. The court is naturally inclined to commit its intelligence and its conscience to some extent to the conclusions reached by the special master; but as the present incumbent was not responsible for the reference, and as such reference can only appear unnecessary, it may be well to approach the matter unhampered so far as possible by advice.

The master finds (1) that it was proper to allege that the late George F. Gilman carried on the tea business "in copartnership with one George H. Hartford," and (2) that it was improper to allege that such copartnership business became extremely profitable and the good will of great value.    I agree with his first conclusion, and disagree with his second.    Exceptions 1 and 2 are overruled.

He finds (3) that it was proper to spread on the record the picture of Mr. Gilman's troubles with relatives, and (4) that such troubles led to an estrangement.    I agree with the master, and exceptions 3 and 4 are overruled.

He finds (5) that it was improper to allege that the said Gilman made no will.    I cannot agree with him.    The allegation is in the highest degree essential to the symmetrical construction of the plaintiff's contention.    Having alleged that George F. Gilman had adopted the complainant as his daughter, and had promised to give her all his property in return for her services rendered, the demand for a specific performance would be of too fragile a nature to warrant bothering this or any other tribunal if he had made a will thereafter.    It is equally clear that, if he had made one conforming to his promise, the way of relief would have been evident.    The allegation is not absolutely impertinent and immaterial, and in such a case the rule demands that it be retained.    Exception No. 5 is overruled.

He finds (6) it was pertinent to allege that New York administrators were appointed.    Exception No. 6 is overruled.

He finds (7) that it was impertinent to allege that the relatives object to the appointment of the trust company as Connecticut administrator, and have appealed, or threatened and intend to appeal, from the decision of the probate court, and (8) also impertinent to allege that the complainant had no notice of the proceedings in the probate court aforesaid.    At the present time, the relatives have either appealed, or they have not.    If an appeal has been taken, and has either been disposed of or is pending, the complainant may state the fact.    She

should erase what she claims the relatives threaten to do. She may also state the fact that the proceedings were without notice to her, if that be the fact. Exception No. 7 is modified. Exception No. 8 is overruled.

He finds, as to exceptions 9 and 10, that it is impertinent to allege how the tea stores became valuable, and how interference with them in the manner proposed will destroy that value. I agree with the master. Exceptions 9 and 10 are sustained.

He finds that the allegations of the thirteenth and fourteenth paragraphs (under exceptions 11 and 12) are impertinent. Exception 11 relates to paragraph 13. Complainant in effect says that she is trying to collect certain checks and drafts which Mr. Gilman gave her for value, and that the administrators object and propose to contest. I agree with the master. Exception 11 is sustained. Exception 12 refers to paragraph 14. It is therein alleged that disputes have arisen between relatives of the half blood and relatives of the whole blood, and that the expense and delay resulting therefrom would be avoided, if this contention results in the complainant's favor. I cannot agree with the master that this is impertinent from every point of view. Nor do I agree with the complainant that the facts should be stated so minutely. The complainant is entitled to state the general fact that much expense, trouble, and delay is likely to follow the present condition of affairs; but she must confine herself, both in statement and proof, to the general situation. It is clearly incompetent to follow out lines which might lead to interminable confusion. Exception 12 is modified.

Exception 13 relates to fifteenth paragraph, and the master thinks the paragraph should remain. It alleges in brief that the relatives are so scattered and the property so widely distributed that it is impossible for the complainant to join all the parties referred to, but that she intends to institute another action in New York, endeavoring thereby to restrain them from interfering with the property and with the tea business especially, so that in the end the title to the Gilman estate can be settled in this action. Say what one may of these allegations, they are not serious or harmful to the respondents. If complainant has followed up her intention, there is no reason why this court should be kept in ignorance thereof. If she has not done so, the respondents can easily show the futility of the intention. I agree with the master, and exception 13 is overruled.

As to the cost of the reference: The order was passed May 27, 1901, and purports to have been based upon the motion of both parties. In the final outcome the balance of advantage appears to have accrued to the complainant, and yet in some respects the contention of the respondents has been sustained. The master has waited painfully long for his modest demand. Let the complainant pay one-fourth and respondents three-fourths of the master's charges; the amounts expended to abide the judgment of the court on the merits.